UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ROBERT LEE JOHNSON,**<br><br>   **Plaintiff,**<br><br>       v.<br><br>**THE DISTRICT OF COLUMBIA,** *et al.*,<br><br>   **Defendants.** | Civil Action No.  11-1445 (JEB) |

## MEMORANDUM OPINION

Following his arrest, Plaintiff Robert Lee Johnson was held in the District of Columbia's Central Detention Facility, also known as the D.C. Jail, from April through August 2010. While at CDF, Plaintiff claims to have been assaulted by correctional officers and fellow inmates in retaliation for having informed a security guard about a smuggling network operating within the Jail. Plaintiff's Complaint alleges that the District violated his Eighth Amendment rights and that, together with co-Defendant Corrections Corporation of America, manager of CDF, it committed various common-law torts, including negligence, assault and battery, and intentional infliction of emotional distress. The District has now filed a Motion to Dismiss or, in the alternative, for Summary Judgment on a number of grounds, including Plaintiff's failure to exhaust administrative remedies required by the Prison Litigation Reform Act. As the Court agrees that Plaintiff failed to properly exhaust – and failed to show that he was otherwise excused from exhaustion – the Court will dismiss his sole federal claim. Having done so, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims, which he may refile in the appropriate state court.

I.      **Background**

According to the Complaint, which the Court must presume true for purposes of this Motion, Plaintiff was held at the Jail for a period of four months following his arrest. See Compl., ¶¶ 1, 14. While detained, Johnson "discovered that his cellmate was part of an organized network of [correctional officers] and prisoners who regularly smuggled contraband" into the facility. Id., ¶ 15. Plaintiff informed a security guard about the smuggling scheme, see id., ¶ 21, and shortly thereafter began receiving threats from individuals involved with the smuggling ring. See id., ¶ 23. The retaliation soon escalated, including a physical attack; "[d]uring the attack, Plaintiff was beaten while handcuffed and, at one point during the beating, one of the [correctional officers] urinated into a cup and threw the urine into Plaintiff's face." Id., ¶ 26.

Plaintiff did not file a grievance related to the incident, Opp., Exh. 1 (Affidavit of Robert Lee Johnson), ¶ 13; however, he claims that the Warden, Simon Wainwright, "watched my being beaten by the [correctional officers] on videotape," id., ¶ 8, and later apologized to Plaintiff for what had taken place. Id. Plaintiff claims that the Warden "told [him] that the matter would be handled," id., but "he never told me anything about a process where I needed to file a complaint against the [correctional officers]." Id.

Plaintiff experienced a second attack soon after the first, in which he was stabbed twice. See Compl., ¶ 28. Plaintiff's mother learned of the beatings from a letter she received from another prisoner; concerned with her son's welfare, she attempted to visit the facility, but was turned away. See id., ¶¶ 29-30. Ultimately, she was permitted to see him and witnessed bruising and injuries on her son's body. See id., ¶ 35. Plaintiff's mother returned on another occasion, and while waiting to meet with her son, correctional officers sprayed him with water bottles

filled with a mixture of urine and feces and refused to allow him to wash off. See id., ¶¶ 37-38. Plaintiff claims that he was subjected to such treatment – in addition to the beatings – on "numerous occasions." See id., ¶¶ 41-42. Plaintiff never pursued the facility's grievance process to remedy any of these incidents. Johnson Aff., ¶ 13. He attributes his inaction to the failure of any staff at the facility to alert him to a "process where [he] could complain about what the [correctional officers] were doing to me," id., ¶ 9, despite the fact that he "complained repeatedly to various individuals about how I was being treated at CDF." Id., ¶ 11. "As a result, for the entire time I was at CDF, I had no knowledge of any process that I needed to follow to complain about how I was treated by the [correctional officers]." Id., ¶ 13. Further, Johnson attributes his failure to file a grievance to his inability to read, id., ¶ 14, and to having been "diagnosed with bipolar disorder" and "assessed to be near the borderline of mental retardation." Compl., ¶ 12.

Plaintiff named as Defendants both the District and Corrections Corporation of America (CCA), which manages the D.C. Jail. Id., ¶¶ 2, 4, 5. He asserts five causes of action: a 42 U.S.C. § 1983 claim for violation of the Eighth Amendment against the District only (Count I) and common-law counts against both Defendants of negligence (Count II), assault and battery (Count III), intentional infliction of emotional distress (Count IV), and negligent infliction of emotional distress (Count V). The District has now filed a Motion to Dismiss or, in the alternative, for Summary Judgment.

## II.     Legal Standard

In moving to dismiss Count I (§ 1983), the District argues that Plaintiff failed to exhaust available administrative remedies prior to filing the instant civil action. See Mot. at 6-7. The Prison Litigation Reform Act (PLRA) exhaustion requirement, however, is not a jurisdictional

3

bar, Woodford v. Ngo, 548 U.S. 81, 101 (2006); Ali v. Dist. of Columbia, 278 F.3d 1, 5-6 (D.C. Cir. 2002); instead, it operates as "'an affirmative defense that the defendants have the burden of pleading and proving.'" Brengettcy v. Horton, 423 F.3d 674, 682 (7th Cir. 2005) (quoting Dale v. Lappin, 376 F .3d 652, 655 (7th Cir. 2004)); Anderson v. XYZ Correctional Health Servs., Inc., 407 F.3d 674, 681 (4th Cir. 2005) ("[A]n inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise properly raised by the defendant."); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) (holding that "nonexhaustion under § 1997e(a) . . . does not impose a pleading requirement," but "creates a defense [such that] defendants have the burden of raising and proving the absence of exhaustion"), cert. denied *sub nom*, Alameida v. Wyatt, 540 U.S. 810 (2003); Jackson v. Dist. of Columbia, 89 F. Supp. 2d 48, 56 (D.D.C. 2000) (holding that exhaustion under § 1997e(a) is an affirmative defense), vacated in part on other grounds, 254 F.3d 262 (D.C. Cir. 2001).

      Accordingly, a Rule 12(b)(6) motion to dismiss for "failure to state a claim upon which relief can be granted" or a Rule 56 motion for summary judgment, rather than a Rule 12(b)(1) jurisdictional motion, are the appropriate vehicles to challenge an alleged failure to exhaust administrative remedies under the PLRA. Lopez v. Huff, 508 F. Supp. 2d 71, 75 n.4 (D.D.C. 2007) (citing Jones v. Bock, 549 U.S. 199, 215 (2007)). "District courts may refer to materials outside the pleadings in resolving a 12(b)(6) motion. But when they do, they must also convert the motion to dismiss into one for summary judgment." Kim v. United States, 632 F.3d 713, 719 (D.C. Cir. 2011) (citing Fed. R. Civ. P. 12(d)). Because both Defendant and Plaintiff have submitted, and the Court has considered, matters outside of the pleadings, the Court treats Defendant's Motion as one for summary judgment under Rule 56. Yates v. Dist. of Columbia, 324 F.3d 724, 725 (D.C. Cir. 2003) (motion to dismiss under Rule 12(b)(6) converted to

4

summary judgment motion under Rule 56 where parties submitted and magistrate judge considered matters outside the pleadings). Indeed, Plaintiff has not objected to such conversion or claimed any prejudice therefrom. See Opp. at 3-4; see also Brown v. Dorsey & Whitney, 267 F. Supp. 2d 61, 68 (D.D.C. 2003) (court converted 12(b)(6) motion to one for summary judgment where "the parties will not be prejudiced by the Court's consideration of matters outside the pleadings . . .").

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. Holcomb, 433 F.3d at 895; Liberty Lobby, Inc., 477 U.S. at 248. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, Inc., 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and

must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in its favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Liberty Lobby, Inc., 477 U.S. at 249-50.

### III.    Analysis

The District raises a number of challenges to the claims set forth in the Complaint, but the Court need only address its argument that Plaintiff's § 1983 claim is barred by the PLRA because he failed to exhaust his administrative remedies. See Mot. at 6-7; Reply at 1-5. Plaintiff, in fact, acknowledges that he did not do so. Opp. at 4. Once Defendant has shown that Plaintiff failed to exhaust his administrative remedies, the burden shifts to Plaintiff to establish that a failure to exhaust was due to the unavailability of remedies. See Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011) ("Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him . . . ."); see also Opp. at 7 (Plaintiff himself acknowledging that "if the trier of fact found that the grievance process was available to Plaintiff, Plaintiff's § 1983 claim would necessarily fail"). Plaintiff seeks to excuse his failure to exhaust, accordingly, by establishing that the facility's grievance process was unavailable to him because of 1) his mental incompetency and 2) the failure of staff to inform him of the process. See Opp. at 4.

The Court ultimately finds that there is no material factual dispute as to the availability of the grievance process to Plaintiff under either of these arguments and will thus dismiss Count I. Having dispensed with Plaintiff's only federal claim, the Court will next determine whether to

exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. As the Court declines to do so, it will dismiss the case without prejudice.

      A.  <u>Count I: Administrative Exhaustion</u>

In relevant part, the PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e(a) "afford[s] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case" and, where possible, to "satisfy the inmate, thereby obviating the need for litigation." <u>Porter v. Nussle</u>, 534 U.S. 516, 524-25 (2002). The exhaustion requirement is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences." <u>Id.</u> at 520; <u>see</u> <u>Jones v. Bock</u>, 549 U.S. 199, 211 (2007). Exhaustion under the PLRA requires that a prisoner comply with procedural rules, including filing deadlines, as a precondition to filing a civil suit in federal court, regardless of the relief offered through the administrative process. <u>See</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 85 (2006); <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001). A prisoner may thus file a § 1983 action concerning the conditions of his confinement only after he has exhausted the prison's administrative remedies. <u>See</u> <u>Jackson v. District of Columbia</u>, 254 F.3d 262, 269 (D.C. Cir. 2001).

As Plaintiff notes, however, <u>see</u> Opp. at 5, the PLRA requires that an inmate exhaust only those administrative remedies "as are available." 42 U.S.C. § 1997e(a). "We have recognized that the PLRA therefore does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'" <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 822 (9th Cir. 2010) (internal citations omitted). In this case, Plaintiff argues that both his mental incompetence and

his ignorance of the administrative processes render the remedies "unavailable." The Court will address each contention in turn.

### *1. Mental Incompetence*

Plaintiff first maintains that his "mental incompetence and ongoing victimization and humiliation by Defendant demonstrate that the prison grievance process was absolutely unavailable to him." Opp. at 6. In so arguing, however, Plaintiff relies on language from distinguishable, non-binding authorities. See id. at 4-7. The two cases that Plaintiff cites are, in fact, contrary to the bulk of authority that has consistently held that individuals with disabilities or mental illness must nonetheless comply with the PLRA's exhaustion requirements. See, e.g., Smith v. Corr. Corp. of America, Inc., 92 Fed. Appx. 649, 650 (10th Cir. 2004) (affirming district court's determination that plaintiff was not excused from exhaustion despite fact that he was receiving medication for a mental illness and was being housed in a mental health unit); Calloway v. Grimshaw, No. 09-1354, 2011 WL 4345299, at *5 (N.D.N.Y. Aug. 10, 2011) (inmate's mental or emotional condition not a "special circumstance" preventing him from exhausting his administrative remedies); Newman v. Duncan, No. 04-395, 2007 WL 2847304, at *4 (N.D.N.Y. Sept. 26, 2007) (same); Clay v. Catero, No. 07-555, 2010 WL 891845 (W.D. Mich. March 11, 2010) (noting that even if plaintiff had asserted his mental illness as an excuse for failing to exhaust his administrative remedies, such an argument would fail); Howard v. Pettiford, No. 07-887, 2007 WL 3119441, at *2 (D.S.C. Oct. 22, 2007 ) (court refused to excuse plaintiff's failure to exhaust based on his dyslexia and mental illness); Yorkey v. Pettiford, No. 07-1037, 2007 WL 2750068, at *4 (D.S.C. Sep. 20, 2007) (plaintiff's mental illness did not excuse his failure to exhaust); Goldenberg v. St. Barnabas Hosp., No. 01-7435, 2005 WL 426701, at *5 (S.D.N.Y. Feb. 23, 2005) (plaintiff's assertion that he was physically and mentally

incapable of filing an administrative claim did not excuse him from PLRA's exhaustion requirements).

Plaintiff points to two cases from other circuits to bolster his claim that "mental incompetence" can support a finding that administrative remedies were unavailable. See Opp. at 5-6 (citing Braswell v. Corr. Corp. of America, 419 Fed. Appx. 622 (6th Cir. 2011), and Whittington v. Sokol, 491 F. Supp. 2d 1012 (D. Colo. 2007)). Neither case is binding on this Court, and the facts of each are arguably distinguishable from what occurred here. In Braswell, the Sixth Circuit held that there was a material factual dispute as to the availability of the grievance process where the plaintiff was diagnosed with schizophrenia and his condition had deteriorated to the point where he was "speaking 'gibberish'" and could not care for himself. Id. at 624-626. "[G]iven the alleged deterioration of Horton's mental state, there is some doubt that Horton even knew that he needed mental health treatment—much less that he needed to communicate that need to CCA personnel." Id. at 625. Similarly, in Whittington, the court found that the defendant had failed to carry its burden of demonstrating the plaintiff's failure to exhaust where the plaintiff presented evidence that he was "'transferred to a mental institution 5 days after the [event upon which the claim was based]' and 'remained in the [p]sychiatric ward . . . for approximately six month[s].'" 491 F. Supp. 2d at 1020.

In contrast, there is nothing to suggest here that Plaintiff's "inability to read," his "mental retardation," or "other serious mental health diagnoses," Opp. at 4, prevented him from accessing the DOC's grievance process. Indeed, the affidavit that Plaintiff has submitted in support of his Opposition is reasonably sophisticated and demonstrates an ability to express concerns with the treatment he claims he experienced at CDF. See Johnson Affidavit. Furthermore, the fact that Plaintiff may have been mentally incompetent in 2008 or 2009, see Opp. at 6-7, Exh. 3

9

(Neuropsychological Evaluation, 2/13/08) & Exh. 4 (Maryland Dept. of Health and Mental Hygiene Competency Evaluation, 4/28/08), does not show he was incompetent during his 2010 detention, as an individual's competency is not fixed, but may vary over time. See, e.g., United States v. Weston, 255 F.3d 873, 883 (D.C. Cir. 2001) (recognizing possibility of an individual's competency being restored prior to trial); Khiem v. U.S., 612 A.2d 160, 168 (D.C. 1992) (same). His affidavit here, in fact, attests to his current competence. See Johnson Aff. at 1.

The Court will thus follow the substantial majority of cases and decline to extend the limited unavailability exception to the facts at hand.

### 2. *Failure to Inform*

Plaintiff also argues that the grievance process was unavailable to him because "Defendant never informed him . . . regarding the grievance process." Opp. at 4. Plaintiff's affidavit provides further detail regarding this claim:

> At no time did anyone tell me that I needed to follow a process to complain about my treatment as a prisoner at CDF. As a result, for the entire time I was at CDF, I had no knowledge of any process that I needed to follow to complain about how I was treated by the COs. . . . . If any documents were given to me, I cannot read. I was diagnosed with Mental Retardation and other mental disorders, by Doctors at [a] young age. CDF knew this. I was also never told by anyone at CDF that I had been given a document that described any process where I could complain about how I was treated at CDF. If I had known about that kind of process, I would have used it.

Johnson Aff., ¶¶ 12-16. Defendant disputes Plaintiff's claimed unawareness, stating that "[t]he DOC has a policy in place to inform every inmate of the grievance procedure." Reply at 2 & Exh. D (DOC Program Statement 4020.1D). "DOC also ensures that illiterate inmates get the benefit of the handbook. Every inmate is assigned a case manager. If an inmate cannot read, the Case Manager reads the orientation materials to the inmate or the information may be presented

10

from a media recording." Reply at 2 (internal citations omitted). As this type of factual dispute is inappropriate for resolution on summary judgment, the Court will assume the truth of Plaintiff's averments.

It is nonetheless significant that Plaintiff does not argue that Defendant affirmatively obstructed his access to the grievance process; instead, he argues only that CDF staff failed to provide him with information regarding the process. See Opp. at 4. Courts have distinguished "failure to inform" cases like this one from cases in which affirmative action by prison staff prevented access to remedies. See, e.g., Womack v. Smith, No. 06-2348, 2008 WL 822114, at *6 (M.D. Pa. Mar. 26, 2008) (contrasting the consistency of precedent regarding affirmative conduct that impedes an inmate's ability to exhaust with the split of authority in failure-to-inform cases), reversed and remanded on other grounds, 310 Fed. Appx. 547 (3d. Cir. 2009); El'Shabazz v. City of Philadelphia, No. 05-353, 2007 WL 2155676, at *3 (E.D. Pa. July 25, 2007) (recognizing distinction between cases where prison officials mislead inmates about the administrative process and cases where prison officials fail to inform inmates of the process).

Even if Plaintiff had argued some type of obstruction here, the undisputed facts do not support it. The warden of the prison has an official duty to aid a prisoner who seeks assistance with exhaustion; however, the prisoner must actually seek the warden's assistance before the duty is triggered. See, e.g., Ramos v. Smith, 187 Fed. Appx. 152, 154 (3d Cir. 2006) (illiterate prisoners who fail to seek assistance from prison officials and prisoners who receive inaccurate guidance from their attorneys are not excused from the exhaustion requirement). While Plaintiff states that the Warden of CDF was aware of one of the assaults, apologized for it, and said it would be handled, Johnson Aff. ¶ 8, nowhere does Plaintiff claim that he ever requested any assistance from the Warden in filing a grievance. See id.; Opp. at 6, 8. Nor does he aver that he

relied on the Warden's statements in deciding not to file a grievance. In addition, Plaintiff does not argue that the Warden or other prison officials misled him about the grievance process or indicated that he should not or could not pursue it. In any event, again, his claim is only that he was not aware of the process. See Opp. at 4.

While it is clear that affirmative misconduct that prevents an inmate from exhausting renders administrative remedies unavailable, see, e.g., Little v. Jones, 607 F.3d 1245, 1250 (10th Cir. 2010) ("Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust"); Turner v. Burnside, 541 F.3d 1077, 1084-85 (11th Cir. 2008) (an administrative remedy is not available for purposes of PLRA where prison officials render pursuit of remedy irrational through serious threats of substantial retaliation), there is less clarity with regard to cases involving claims that prison officials failed to inform inmates of the grievance system. See Womack, 2008 WL 822114, at *6 (discussing split). While this Circuit has not yet weighed in on the issue, the majority of courts to have done so have held that an inmate's subjective lack of information about his administrative remedies does not excuse a failure to exhaust.

In Twitty v. McCoskey, 226 Fed. Appx. 594 (7th Cir. 2007), a pretrial detainee sued staff members of a county jail under § 1983, alleging that they were deliberately indifferent to his medical needs. Id. at 595. The detainee argued that he should "not [have been] required to exhaust administrative remedies when he was unaware of any formal grievance procedure available at the jail. He argue[d] that the jail failed to make him aware of the procedure, and that this omission should excuse him from having to formally comply with it." Id. at 596. The Seventh Circuit rejected this argument, stating, "A prisoner's lack of awareness of a grievance

procedure, however, does not excuse compliance." Id.  The court reasoned that the exhaustion requirements of the PLRA are clear, and "we are not free to 'engraft upon the statute an exception that Congress did not place there.'" Id. (citing Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000)).

In Brock v. Kenton County, 93 Fed. Appx. 793 (6th Cir. 2004), the Sixth Circuit similarly rejected an argument that administrative remedies were "unavailable" based on an inmate's lack of information.  Id. at 797.  There, a juvenile offender argued that the grievance system was not "available" to him because "juvenile inmates were not aware of its existence," he never was given "any information about the grievance system," and he "did not, in fact, know that a grievance system existed."  Id.  Relying on the same language from Chelette, the court declined an invitation to extend unavailability beyond cases where defendant prison officials affirmatively prevent an inmate from using the grievance system.  Id. at 798.

And in Gonzales-Liranza v. Naranjo, 76 Fed. Appx. 270 (10th Cir. 2003), the Tenth Circuit refused to extend the unavailability exception to exhaustion where a pre-trial detainee sought to be excused from his failure to exhaust where he claimed that "'[t]here are no administrative remedies that Plaintiff is aware of . . . [and] [p]laintiff was [not] advised that he could file anything administratively for the inactions that occurred.'"  Id. at 271.  Similar to the facts here, the court noted that "[i]t is undisputed that [the facility] had a written grievance procedure and it is undisputed that plaintiff did not exhaust that procedure."  Id.  In rejecting the plaintiff's argument, the court reasoned that "any factual dispute between the parties as to whether or not plaintiff was ever advised or informed of the prison's grievance procedures was not relevant," id. at 272, as "'[t]he statutory exhaustion requirement of § 1997e(a) is mandatory, and the district court [is] not authorized to dispense with it.'"  Id. at 273 (citing Beaudry v. Corr.

13

Corp. of Am., 331 F.3d 1164, 1167 n.5 (10th Cir.2003)); see also El'Shabazz, 2007 WL 2155676, at *3 (no unavailability where inmate claimed prison officials failed to take affirmative steps to inform prisoners of the grievance process).

The approach employed by these circuits is consistent with Supreme Court precedent, which has strictly applied the PLRA's provisions and has consistently refused to authorize judicially created exceptions to the exhaustion requirement. See Graham v. Cty. of Gloucester, 668 F. Supp. 2d 734, 739 (E.D. Va. 2009) (collecting cases and noting that "the Supreme Court has consistently ruled in favor of uniform application of the PLRA and strict compliance with its exhaustion requirement"). Furthermore, requiring an inquiry into an individual inmate's knowledge of the grievance process would be a "time-consuming task [] fraught with uncertainty," id. at 740, as any inmate could create a triable issue of fact merely by averring he did not know of the process. See id.

While the Court is aware of contrary, but non-binding, authority, notably Goebert v. Lee County, 510 F.3d 1312 (11th Cir. 2007), it declines to adopt the minority position taken in those cases. In Goebert, the Eleventh Circuit excused the plaintiff's failure to exhaust where he was never advised of the grievance system, reasoning, "That which is unknown and unknowable is unavailable." Id. at 1323; see also Romanelli v. Suliene, No. 07-19, 2008 WL 4587110, at *6 (W.D. Wisc. Jan. 10, 2008) (placing onus on officials to inform prisoners of grievance procedures: "if officials want to . . . obtain dismissal of lawsuits filed without using the administrative remedy process, they must at least tell the prisoner what the process is"); Russell v. Unknown Cook Cty. Sheriff's Officers, No. 03-3786, 2004 WL 2997503, at *4-5 (N.D. Ill. Dec. 27, 2004) (defendants required to establish that they gave actual notice (*e.g.*, that an inmate handbook was distributed to plaintiff) where plaintiff alleged ignorance of administrative

process); Arnold v. Goetz, 245 F. Supp. 2d 527, 537-38 (S.D.N.Y. 2003) (noting that an inmate who is not informed about the grievance procedures cannot avail himself of them); Hall v. Sheahan, No. 00-1649, 2001 WL 111019, at *2 (N.D. Ill. Feb. 2, 2001) ("An institution cannot keep inmates in ignorance of the grievance procedure and then fault them for not using it."). Since both Russell and Hall were decided before the Seventh Circuit's unpublished opinion in Twitty v. McCoskey, the Court finds them to be of only limited persuasive value.

As this Circuit has not recognized a prison's failure to inform as an exception to the PLRA's exhaustion requirement, the Court will follow the decisions from other circuits that have been reluctant to carve out new exceptions to this requirement. See Dillon v. Rogers, 596 F.3d 260, 270 (5th Cir. 2010) (acknowledging that courts are constrained from "licens[ing]" new exceptions to the PLRA's exhaustion requirements). While the limited number of exceptions that excuse a prisoner's failure to exhaust may result in harsh outcomes, the Court notes that Plaintiff was not without means to pursue CDF's grievance procedure. He could have sought assistance from family members who were aware of the abuse, Compl., ¶¶ 29-39, or from his attorney who "visited with him at CDF and observed the same wounds." Id., ¶ 40; see Johnson-Ester v. Elyea, No. 07-4190, 2009 WL 632250, at *6-7 (N.D. Ill. Mar.9, 2009) (recognizing that the actions taken on plaintiff's behalf by family and his attorney constitute exhaustion of available administrative remedies). Additionally, Plaintiff could have sought assistance from the Warden at CDF, whom he was in contact with and who was under a duty to assist Plaintiff had he requested such assistance. See Johnson Aff., ¶8.

Although the Court is not unsympathetic to what Plaintiff alleges occurred here – indeed, his allegations are in places quite alarming – it nonetheless cannot find that Plaintiff has

established a genuine issue of material fact as to his failure to exhaust administrative remedies. It will, consequently, grant Defendant's Motion to Dismiss Count I without prejudice.

B. <u>Counts II–V: Common-Law Claims</u>

District courts are given supplemental (formerly, "pendent") jurisdiction over state claims that "form part of the same case or controversy" as federal claims over which they have original jurisdiction. 28 U.S.C. § 1367(a). By the same token, they "may decline to exercise supplemental jurisdiction over [such] claim[s] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." § 1367(c)(3). The Court has original jurisdiction here only with regard to Count I (§ 1983 Claim) against the District, and it must determine whether it should exercise supplemental jurisdiction over the remaining common-law claims (Count II through Count V) against both Defendants in light of the dismissal of the only federal claim.

The decision of whether to exercise supplemental jurisdiction where a court has dismissed all federal claims is left to the court's discretion as "pendent jurisdiction is a doctrine of discretion, not a plaintiff's right." <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966), <u>quoted in</u> <u>Shekoyan v. Sibley Int'l</u>, 409 F.3d 414, 423 (D.C. Cir. 2005). When deciding whether to exercise supplemental jurisdiction over state claims, federal courts should consider "judicial economy, convenience and fairness to litigants." <u>Id.</u> Nonetheless, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine —judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." <u>Carnegie–Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988); <u>see</u> <u>Edmondson & Gallagher v. Alban Towers Tenants Ass'n</u>, 48 F.3d 1260, 1267 (D.C. Cir. 1995) (finding the discretion set out in

16

Carnegie-Mellon Univ. "unaffected by the subsequent enactment of 28 U.S.C. § 1367(d), in the Judicial Improvements Act of 1990").

Here the factors clearly weigh against retention of the case.  This Court has handled little in the case beyond the current Motion to Dismiss and has not dealt at all with the pendent state claims.  Compare Schuler v. PricewaterhouseCoopers, LLP, 595 F.3d 370, 378 (D.C. Cir. 2010) (finding that district court appropriately retained pendent jurisdiction over state claims where it had "invested time and resources" in the case).  Finally, Plaintiff will not be prejudiced because 28 U.S.C. 1367(d) provides for a tolling of the statute of limitations during the period the case was here and for at least 30 days thereafter.  See Shekoyan, 409 F.3d at 419 (finding that because of this tolling, dismissal of the pendent state claims "will not adversely impact plaintiff's ability to pursue his District of Columbia claims in the local court system.") (internal citation omitted).

The Court thus declines to exercise supplemental jurisdiction over Plaintiff's remaining common-law claims, which he may file in the appropriate state or local forum.

**IV.   Conclusion**

The Court will, therefore, issue a contemporaneous Order that grants the Motion and dismisses the case without prejudice.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  June 21, 2012